13-2256 Knox Energy v. Gasco Drilling May it please the Court, Daniel Byrd for Gasco Drilling. The District Court erroneously held as a matter of law that no reasonable jury could find the console assented to a contract that it drafted, proposed, reviewed, and signed. That unprecedented holding took this case away from the jury in the middle of trial. And because reasonable minds could disagree about the facts to be drawn and the conclusions to be drawn from the evidence, this Court must reverse. I'd like to focus on three points, which I'll outline briefly and then address. Is your position that as long as the contract is signed, there is always mutual assent? I don't think it's necessary for us to go that far, Your Honor. Well, okay. When can it not be mutual assent if the contract's signed? I think that in a case like when that question is raised in a Rule 50 posture, that is almost always going to require the case to go to a jury at a minimum. You can imagine if two parties signed a contract on stage while they're performing in a play, and everybody knows that that's what's happening, well, maybe that's a case. Maybe that's the extreme case where you've got a signed contract and you could say that there's no way that anybody would ever think that two actors on a stage are actually entering an agreement. But you don't have to come anywhere near that kind of level of law, especially in this diversity case. The Supreme Court of Virginia has made clear that the question is whether there was objective manifestations of assent, and here there were plenty. It's undisputed that can solve legal development. One of their arguments is that if the deal's too good to be true, it's too good to be true, and you just can't say, aha, gotcha, I'm going to accept this. Is there any validity to that? There's no validity to that in this case. Well, no, in general. Let's take it in general. In general, as a matter of Virginia law, the Virginia Supreme Court has never said that that is the standard. That's not the law. There's no case that they can cite, and they haven't. Well, OK, suppose I offered, suppose you and I had some contract with each other, and part of it was that I promised to fly you to California for some meeting. And for whatever reason, the contract said in a military jet. Would that be something, then, I'd have to go buy a military jet or get the government to agree to take you there if you accepted it? I think it would depend on what our communications were. The Virginia Supreme Court says you look at the communications between the parties during negotiations. In the Metro Realty case, the district court judge, or the trial court, said, I just can't believe, it's unreasonable to me that anyone would enter this agreement. And the Supreme Court of Virginia said, that's not how we evaluate assent to contracts in Virginia. Virginia has very clear black letter rules about assent. And here. Well, suppose, then, that somebody from Knox had said, had misplaced the comma in the numbers to be paid instead, instead of saying you're to be paid $10,800 a day for waiting time, you get $108,000 per day. Would that be binding on them? I think it would, Your Honor, I think it would depend on the facts and circumstances. There's no case that says, the Virginia Supreme Court has had cases where there's an undisputed typo in the agreement. The Moore case, the Chang case, and it has enforced those agreements as written. In this case, it's, this case is nowhere near that. Consol affirmed the contract it intended to renew. Gasco asked them, is this the contract you wish to make subject to the addendum? Consol says it is. Gasco signed. Now, we are interested in what you have to say, but you should be interested in what we have to say, too. You know, it's a two-way street. The judge has been trying to, to ask you a follow-up. What if it was $1,800,000? What if they changed to that per day? Isn't there some level at which it gets ridiculous? And doesn't the Supreme Court case, cases in Virginia say you look at the conduct and the words? Absolutely, Your Honor. You do look at the conduct and the words. And I can agree that there could be a point where it becomes so ridiculous, no one could ever possibly imagine that the parties intended to enter that agreement. But where you're renewing a contract that's been previously performed, where there was no dispute and no issue. And remember, when the parties enter this contract, it's a drilling contract. It is first and foremost a drilling contract. Mr. Ratliff testified at trial, when I got this contract, I expect it to drill. I knew they'd been having problems with the company they hired. I get a contract, I expect to drill. He doesn't focus on this as a take-or-pay contract. And besides, the last time when the parties, when take-or-pay compensation first became an issue between these parties, Consol came to Gasco and said, could we cut a deal and reduce this take-or-pay rate? And they did. Mr. Ratliff reduced the rate for both drilling rigs by $8,000 per day in response for one dollar in consideration. If there was going to be an issue with take-or-pay, of course he thought they could work that out down the road. This was a drilling contract. And he performed it. He renewed a lease in Tennessee in order to house the equipment, which he maintained. He said, I would have mothballed that equipment, but instead I maintained it. There were employees I would have laid off, if not for this contract, but I kept them on. This is not a case where this is a brand-new contract, the parties have never dealt together, it's too good to be true, and there's some kind of typo. I would like to talk about what's also... You think that they ought to, the contract, your damages then are limited to the $2,800 per day that you subsequently agreed to when you modified the contract? I'm sorry, I'm not sure what you're referring to. You told me that you knocked off $8,000 per day for the idle time for the drill, right? Correct. And do you think your damages then are limited to $10,800 minus $8,000? No, because under that amendment, the original rates kicked back in once drilling began again. That's right in the amendment, Your Honor. And I would like to talk about Console's allegations about its mistake, because the jury did not have to believe their account of what happened. Mr. Shoemaker testified at JA-1281-83 that Console intentionally put the drilling contract into its system. It did that because it was necessary for invoicing. It did that for this drilling contract and others. So they intentionally put the drilling contract in their system. And so I want to be clear, this is not a technological glitch. This is not a systems error where they didn't know what was going on. It's a human error. It's a human error. He said at JA-1283 that he forgot about it. So the question is, could the jury have disbelieved Mr. Shoemaker's testimony that he forgot about it? Of course it could. He was an experienced negotiator, and he's the individual who's responsible for signing this contract that Console is trying so desperately to avoid. And if you look at JA-1398, you'll see that when Console responded to Gasco's inquiry about which contract do you want to make subject to this addendum, there's a note from Mr. Shoemaker. We would like to draw your attention to the attached contract, and it gives the 2008 drilling contract number. Best regards, Todd Shoemaker. If you go to the next page, another document that was emailed to Gasco from Console, it is a purchase order. It identifies the 2008 drilling contract. It says that the buyer is Todd Shoemaker, and it's dated May 14, 2011. Now, that is after the alleged Evergreen program came into existence. It's just weeks before these communications between Gasco and Console about the 2008 drilling contract. So could a jury have inferred from these documents that Mr. Shoemaker maybe didn't forget or shouldn't have forgotten about the 2008 drilling contract? Absolutely. And then you have the SEC filings where Console says in 2010 and 2011 it was entering take or pay contracts despite the risks that they face. And Mr. Shoemaker himself said that when this issue arose, and he took a look at the contract, and at JA 1298, he says, we figured it out when we read the addendum what had happened. So even if we're going to look at evidence beyond what the parties said and did to each other, in which we think there's no sign of mistake or haste or confusion, even the issue of whether Console made a mistake here was a question for the jury, and there was a basis for the jury not to believe Mr. Shoemaker. He said that the 2008 drilling contract was not a contract purchase order. There are at least six documents in the record where it is during the course of the original performance of the contract, this is at JA 1477-82, where Console called the contract a contract purchase order. That was in the original term years before this issue ever arose, and all Mr. Shoemaker said at trial was, well, that must have been a mistake too. And so I want to be clear, our argument is not only that when you look at the words and conduct between the parties that there was no sign of any mistake or confusion, but also that the jury did not have to credit Mr. Shoemaker's testimony that this was a mistake and a technological glitch, and it was just, you know, Console's an innocent victim here. This is a sophisticated company. Mr. Shoemaker had experience negotiating contracts. And there was no sign of any hint or mistake in what transpired between the parties. And then even if you, our position is that the post-contract evidence is not relevant to mutual assent. I think that's very clear from the Lucy versus Zamer case. In that case, Lucy and Zamer claimed that there was a disputed contract between Lucy and Zamer. It was written on the back of a restaurant check. Mr. Zamer said the whole thing was a joke. I was trying to bluff Mr. Lucy because I didn't think he had the money for this contract. But the parties signed it. And minutes after they signed, Mr. Lucy picks it up and walks out of the restaurant. And Zamer says, I don't think you understand. This is not a real contract. This is just a joke. Now, that is an express disavowal minutes after the contract is signed, and the Supreme Court did not take that into account in finding mutual assent. It said that when you look at the words and conduct between the parties, there's assent to this contract. Here, Consall is pointing to all kinds of evidence months after the performance about the billing and, oh, we had this discussion about the Marcellus Shale contract. As you can imagine, Consall cross-examined Mr. Ratliff about those issues, and he had answers that the jury could credit. But beyond that, as I said, if you want to look at the post-contract evidence, it shows here that there was good faith performance by Gasco. Mr. Ratliff testified he expected to drill. He planned to drill. And so we think that this is a clear case. At a minimum, it had to go to the jury on the question of mutual assent. Now, what if they had said when he bid on the new contract, I'm sorry, Gasco, but we were dissatisfied with your work and are never going to use you again. And then they sent out this form contract. Would it be your position then that your client still is entitled to the damages that you're I think that would be a question for the jury, Your Honor. On the one hand, they've said we're not going to use you again. On the next hand, they sent the contract. I think it would depend what transpired. If, as here, Gasco followed up and said, you want to renew this contract with us, and they continue down that road, absolutely there could be a basis where a jury could find mutual assent. The other document that I haven't referenced is that after, between the time that Mr. Shoemaker signed the addendum and they sent it back, there was another email. I think it's a PX, I'm sorry, not PX, it's a JA1446, where Consall asked, you know, please give us, you know, tell us who handles purchase orders, invoices, bids, insurance. This is another indication, from Gasco's perspective at least, that Consall was serious about adding this contract. Well, I'm trying to figure out, well, if we agreed with you, the only thing that seems to me to be final, well, almost, is the issue, did the court properly grant partial summary judgment to the natural gas company, finding that the form contract, if revived, the original drilling contract revived the drilling contract as amended. What's your position on that? Our position is that the district court applied the wrong legal standard in evaluating that. Under the Midlothian case in the Supreme Court of Virginia, it is very clear, where you have a renewal contract that is ambiguous and silent as to whether you are renewing the contract as it originally stood or as it was amended, you can't, it is error to just look at the terms of those contracts and try to figure out the answer. You've got to look at plural evidence. And here, neither Consall nor the district court has cited a single case that applied the principle that the district court said, which is you have to take the good with the bad. And he basically applied a rule that says, as a matter of default, you necessarily renew a contract as amended unless you say otherwise. And there's simply no basis in Virginia law to say that. As this court said in the Musgrave case, where a contract is silent on a question before the court, it is ambiguous and you need to look at plural evidence. And here, there is plural evidence supporting Gasco's position. The contract, the addendum does not say they're renewing it as amended. When it inquired about which contract the parties, Consall wished to renew, Consall sent only the 2008 drilling contract. And Consall never raised this argument until well into the litigation, which again is another basis to determine whether or not it actually believed this about the contract at the time or whether this is just something that it came up with in the course of the litigation. So we think that the partial summary judgment should be reversed because there's not a legal basis for it. And the district court and Consall have not cited one. Well, in that event, then if we bought your position, it's a do-over from the beginning. That's correct, Your Honor. It goes back and the whole case gets retried with both all the possible damages on the table for the jury to consider. If I may reserve the rest of my time, thank you. May it please the court, Michael Finney on behalf of Consall Energy and Knox Energy, which I'll refer collectively as Consall for convenience, I'm also joined today by David Gibson at counsel table. Instead of pursuing a quantum merit recovery, which may have been appropriate under the circumstances, Gasco seeks a contract windfall. Its breach of contract claim must fail and judgment should be affirmed for Consall for two principal reasons. First, as a threshold matter of contract interpretation on the pleadings, the district court erred in denying Consall Rule 12C motion because the purported contracts documents unambiguous language shows that the only agreement that could have been formed was an unenforceable legal nullity. Second, as a matter of contract formation, the district court correctly granted judgment as a matter of law to Consall because no reasonable jury could find that the parties' minds had met on all material terms of Gasco's alleged agreement, which is the reinstatement of the with the commencement date of June 13th, 2011. Turning first to the Rule 12C argument. Yeah, maybe you should start with your second argument because I'm not sure the Rule 12C argument is going to go very far. You know, when I read this record, I have a lot of sympathy for what the district judge did, but I'm not sure that you can say as a matter of undisputed fact that that was correct. And so, I think that what you have to do is to try to tell us why under Virginia law this would have been permissible to do what the district court did. Sure. First, what is the target that Gasco must meet? What is the meaning of the mind's inquiry? It's all material terms of its alleged agreement, so it's not just assent to something, it's an alleged agreement. That's found in the case law. We cited the Allen case, there must be mutual assent of the contracting parties to terms reasonably certain under the circumstances. In addition, in the model jury instructions make this point. Those are all good general principles for you. What's the best Virginia case you have? Where's the Virginia case that did what you would do? It's the Lucy case. Okay, so tell me about that. So in that case, there was undisputedly a written agreement, but that did not end the mutual assent inquiry. Instead, the focus is on what would, and again, it's outward manifestations of intent, that's true. What would a reasonable person in the position, how would they have interpreted, understood those outward manifestations? And what did the court grant judgment? No, in that case the court found that it was an enforceable agreement, but I think Lucy shows is that what's important is the reasonable meaning of the words and acts, the outward manifestations. In this case, Consol's outward manifestations judged by the opposing party, in this case Gasco. These parties were not strangers to one another. In fact, the parties, this agreement, it was a renewal, alleged renewal of the 2008 drilling contract. Obviously, the 2008 drilling contract, the terms and circumstances of how that was entered into, highly relevant. That's the same contract that's supposed to continue. In addition, the parties negotiated over this new scope of work. When the 2008 drilling contract ended in August 2010, Gasco wanted to bid for Knox's 2011 program. This was a competitive bid process. Most notably, because it would not have made any sense at the time, it would have been completely unreasonable, Knox did not ask for it. Yeah, no, I think these are all, this is what I was talking about, I think you've got a pretty good jury argument, but what I'm interested in is the district court granting you judgment as a matter of law. Is there a Virginia case that does that? That granted judgment as a matter of law? In these circumstances? I don't know if in, under those circumstances. You haven't found one, have you? Not at, I mean, we did cite the bankruptcy court decision, the NRAJ's trucking case, that was applied in Virginia law, but, you know, that was older and it's not the Supreme Court. But I also think what's important is there's not the circumstances such as that are found in this case. These are extreme circumstances. The take or pay contract, the 2000. Okay, tell me your best out of state case. Best out of state case? Yeah. You know, I think that, you know, we did cite a number of cases on brief. There was the one from the Sixth Circuit in the context of a Rule 68 offer of the transposition of a number, where it just would have struck a reasonable person this could not have been what the other side intended. I think those types of principles, you know, they're the same things. Is this, is it reasonable to consider that we genuinely intended this agreement? Now. Why wouldn't the jury be in a better position to make that decision? Under these. All your arguments. Under these facts, there aren't disputed facts, actually. The conditions of. There are or aren't? There are not. Well, all of his, all of the principles, testimony was he had, he had rationales for what he did. The plaintiff, plaintiff's representative, and you have some pretty good arguments, but that doesn't make any sense. Sounds to me like those, those are disputes as to facts. But it is an objective inquiry, Judge. Not how. But you have to determine what the facts are before you can be objective. Absolutely. But in this case, there were no substantive conversations, negotiations, phone calls about the alleged addendum. It is on paper. And for example, Consol's intent, the addendum form itself, there's nothing about renewing a contract. There's nothing about a drilling contract. Instead, it contemplates that it would apply to an existing active contract. In this case, it's undisputed that the 2008 contract was not existing. It terminated. Ended. It was not current. Yet the addendum to an addendum to add. Paragraph 2. Paragraph 1 does the only substantive thing. Paragraph 2 says all other provisions shall remain in full force and effect. Remain in effect. It's undisputed the 2008 contract was not in effect. In addition, the transmittal email, the June 6th email that attached the addendum form. Again, it only says that this is a current contract. These are our existing contracts. In fact, Mr. Ratliff's testimony was that when he was out of town when this form came in over email, that his secretary, Frieder Rasnick, called him and got across that Consol had an addendum for an existing contract. He also testified he knows this was not existing, but it was clear from the manifestation of this addendum to apply to an existing contract. So he knew it wasn't existing, so he decided to sign on? You know. Well, I mean, I think he, on the summary judgment record, we're obviously challenging the genuineness of his intent and what he really knew at the time. But for purposes of the meeting of the minds analysis, I don't think we need to go there. I think we do have to look at whether a reasonable person in Gasco's position, a reasonable company, could have thought that Consol really, genuinely intended to reinstate an expired, lucrative, take-or-pay drilling contract through a form that's only contemplated in an active contract. And the take-or-pay nature of the contract, it's important to understand exactly what this is. This is not a good price or a really high price for a widget or a service in this case. It's a totally different way of compensating a drilling company. It's a unique way. It's not the standard way. In the standard IADC contract, standby time is provided in sections 4.6 or 4.5, depending on which type of contract. That's when a driller had already mobilized on site. I may have not got this right, but as I understand, factually, Knox or Consol initiated the negotiations, sent Gasco the 2008 drilling contract, and then signed in return the addendum. Is that factually correct? With one caveat, the version of the 2008 contract that was signed when requested, what is this executed version? It was the bid. But in essence, you were attempting to revive the 2008 contract, weren't you? I think that goes to, I mean, there was a core error, Judge Moss described it as a human error. I believe it's also, it's coupled with a system. It's because Consol treated all of these 4,600 contracts in a certain way that were not designed to have any binding nature, to not have. So all that's true, why isn't that a jury question? Because under the circumstances of that transmittal email, they don't fit. The addendum form could not apply to a drilling contract, the 2008 drilling contract in particular, because of its take-or-pay nature. Now again, take-or-pay contracts are different because even if a drilling company does not That is very unusual. You know, we, as I say, I think these are great jury arguments. It's just that their man stood up and testified under oath that he had all these various answers to these, and you may not think they're good, and they might not persuade a jury. I think the objective analysis does go both ways, that Mr. Ratliff's testimony as to his answers, so to speak, those in the district court was correct in not adopting those. Instead, the question is, what would a reasonable company have done in Gasco's position under the circumstances that were known to them, under the party's prior course of dealing with that 2008 contract, under the fact that they had proposed, they were perfectly willing to have done a take-or-pay contract at the time, in December 2010 for this work. Gasco didn't get that bid. Instead another company did. These are big, particularly your client, a big corporation, sophisticated corporation. They're bigger than the other side, actually. So talk to me about the, if we should send this back, talk to me about this attorney-client issue. Sure. First of all, the information is not privileged. That issue was teed up with the district court and the magistrate judge. It's not appealed. It's not privileged information, the fact of the attorney communication. Instead, the question is whether it is admissible or not under Rule 403. It is admissible because in this case, it's not, it doesn't have its relevance for someone to draw an inference of what the attorney's advice was, a negative inference about the advice. Instead, Gasco had contended throughout this case, both pre-trial in its opening statement, said that this was nothing out of the ordinary business as usual. And also, Mr. Ratliff has testified in his deposition and at trial that when things are not out of the ordinary, I don't consult an attorney. But yet the facts are that he did consult an attorney in this case. So it is relevant and it goes to impeach or rebut the idea that this, basically his true intent, it doesn't go to what was communicated by the attorney, the nature of the advice, the fact of the consultation shows it was out of the ordinary. Well, you pretty, don't you sort of infer from that that he was trying to pull a quick one over on the company and that's the, that's the thing he was discussing with his attorney? And he didn't tell his sons about it. The district court. There were like 14 communications in a short period of time? It's a fairly, it's over a year period of time, there's, that there's 14 communications. There was one the day that the contract was signed, there was two on the day of this Marcella Shale bid, others throughout the year, but there was a chart of the communications. And your claim is, I'm sorry, you're saying that they aren't arguing that it is not privileged? That's correct. The fact of the communication, the existence of the communication. Yeah, but they are arguing that the fact that the communication dealt with this contract, because that, we know that, those are the only attorney, they're not arguing that that's not privileged? No, they're arguing that that is prejudicial, because it's asking a jury to draw an adverse inference. Now, the case they cite is a Parker decision from this court under Maryland law, but I think the distinction with Parker, the core distinction, is that there the court said the only probative value was to draw an inference as to what the attorney said. That's what would have been probative to his or her client's state of mind in this accord and satisfaction. In this case, that's not why it's relevant. It's relevant because it shows this was, in fact, out of the ordinary, despite what Mr. Ratliff might want to testify to. It doesn't matter what the attorney said, and the district court, in its motion and lemonade decision, put restrictions on how that evidence could be introduced and argued to guard against the drawing of an adverse inference. I would like to take a moment to talk about the Rule 12c arguments. I do understand. Well, if I were to introduce it, if you didn't want to draw some sort of an adverse inference. Because we want to draw an adverse inference in a different fact. An adverse inference about the nature of the communication, about the substance. We're drawing an adverse inference that Mr. Ratliff knew that this was an out-of-the-ordinary event when he got these emails, and that's why it would be relevant. CASCO has a burden of showing an enforceable agreement. If you look at the plain language of what the addendum does, it cannot meet its burden. The addendum does one thing. It's to substitute a new term provision into the reference contract purchase order. In this case, that is the 2008 drilling contract, it's undisputed. The first paragraph of the addendum states, the parties agreed to modify the term provision, term in quotes, to quote, read as follows. The addendum is not defining a term itself. It's making the term of another document, here 2008 contract, under CASCO's theory, read as follows. Then looking at the form, there's a blank line, term in bold with a colon, then another line, then the substantive language. This term insert must be cut out and pasted over the 2008 drilling contract's term. We look at the 2008 drilling contract, section six is titled term. So that is where this cut and paste must occur. Substantively then, the replacement language says that the term of this agreement shall be for one year from the date set forth above. This must be in the context, read in the context of the 2008 contract. Section two is above. That is the commencement date of July 7, 2008. So the modification on its term, the plain unambiguous language, what the addendum commands, could only create a one year term from July 7, 2008 to July 6, 2009, which is unenforceable. That term would have been completed years before the addendum was signed. It's impossible to be performed. In addition, it would be the exact same agreement that the parties had completed and performed for that exact same time period. There's no other way to read what this addendum language says must be done. And, you know, Gasco's opposition arguments are to the contrary, don't, you know, are appealing to canons of construction, parole evidence, which is not consulted. First, the threshold inquiry. Well, your whole argument is that the parties intended to create an invalid contract. Your Honor. And that's a hard... I understand the concern and the question. That is not the argument, or it's not how I would phrase it. It's that the court must look at the plain language first. Is it ambiguous or not? In this case, it does create an unenforceable agreement. This issue was addressed very recently in the Cyberlock decision. And I am out of time. I could, I have some time for rebuttal, but... All right. Maybe just give us a sentence and sit down. You have a conclusory sentence. Sorry. That basically that it, there's nothing contradictory about finding that a contract unambiguously contains an unenforceable bargain between the two parties. That concept was affirmed by this court based on that reasoning and based on explicit statements that you can't have unambiguously an unenforceable agreement. Thank you. If I could begin with the privilege issue briefly, Your Honor. The district court, the JA 950, when the parties were arguing about summary judgment, said that he, quote, it seems to me to be somewhat a logical conclusion from the facts, end quote, that Mr. Ratliff must have gone and talked to his lawyer and they hatched a plan to get a big windfall. That's exactly what is improper about talking about communications between the lawyer and the client. And the district court recognized that an adverse inference about the substance of the communication was the natural inference to be drawn. And that's why it was, those privileged, the fact that the privileged communication should have been excluded and not come into evidence. Also. Well, couldn't he have cured that with jury instruction? No, Your Honor. I don't think so. I mean, that's such a prejudicial inference to draw about the communication. And that's, the attorney-client privilege protects Gasco from having to make those kinds of hard decisions. Gasco couldn't get into what it talked to its lawyer about because the minute it does that, it waives the privilege and it has to talk about everything that it talked to its lawyer about. And it was not necessary to draw this out on cross-examination to talk about whether this was out of the ordinary. Mr. Ratliff said so. If you look at JA 1167-68, he said that the absence of an effective date on the addendum was out of the ordinary and he needed some time to think about that.  And that's improper. With respect to the mutual assent question, I'll briefly just touch on that. We're not aware of any case in which the Supreme Court of Virginia has rejected the question of assent as a matter of law in the face of a signed contract. With respect to the Whitaker case, which is the Sixth Circuit case that Mr. Finney mentioned, that involved the Rule 60 offer of judgment. There was an undisputed typo. There was no dispute about whether there was a mistake. And there were no communications between the parties. Everything went through the court. The offer of judgment was filed with the court. And then the acceptance was filed with the court. There were no direct communications. And with respect to the fact that the contract was – Mr. Finney mentioned that there was a different version of the contract. The only difference between the contract that Consol sent back and the contract that was ultimately signed, the original 2008 deal, was Consol's signature on the document. What Consol sent back to GASCO to confirm that it wanted to enter the addendum was the full, identical contract with only GASCO's signature. So it was not a different version. It was the identical contract. I'm happy to briefly just mention on – with respect to the contract interpretation, the district court recognized three times in its Rule 50 decision, in addition to its Rule 12c decision, the contract is ambiguous. It can be read different ways. And the – one thing the parties were very clear about in the contract is that they were modifying the term of the 2008 drilling contract to be binding and effective in 2011. There is no way to reconcile those words with Consol's interpretation. They argue in their brief, well, those are procedural words. Well, I'm not aware of any case that says you can ignore words in a contract because they're procedural. They say, oh, those – that's a truism. Well, a truism is always true. And in their interpretation, those words aren't true because it's not binding or effective in 2011. And so we don't think that there's a basis to sustain the judgment below based on the contract interpretation. Do you – are you arguing that the attorney communications are privileged? The attorney communications are absolutely privileged. The document that was put in evidence in front of the jury was, in essence, like a privileged log. Yeah. And are you asserting that that's privileged? We are not asserting that a privileged log is privileged. But we're asserting that the natural inference – It's prejudicial. Exactly. It's prejudicial and the natural inference goes to the substance and that the only way – that the substance is irrelevant unless you draw the natural inference that the district court himself drew at JA-950. Well, with respect to exactly the terms of the reinstated contract, the – you're trying to go back to the contract as originally drawn in 2008. Is that right? That's correct, Your Honor. But the addendum says all – the only thing we're modifying is the term and all other provisions of the contract purchase order remain in full force and effect. So why doesn't that include the various changes that the parties made to it? Because it doesn't say that – it doesn't reference the amendments. Well, it says remain. It does say – For something to remain, it's got to – You take what was and bring it forward, don't you? Well, there's the predicate question of what is the it that's remaining. Is it the contract as it originally stood or is it the amendment? And this is exactly what the Midlothian case says. Where the contract is ambiguous or silent about the renewal intentions, you've got to look at the parole evidence and figure out what the parties intended. And here you can't look at either the addendum or the original contract or any of the amendments and say that clearly and unambiguously the parties intended to take wholesale as amended the latest version of the 2008 joint. Well, it seems to me, at least from your briefs, that you all disagree about the Virginia doctrine of unilateral mistake. Did the district court ever settle that issue? No, the district court did not. That will absolutely be a live issue. If they did not, if he did not, then is that issue properly before this court? It is. The question of whether there was a unilateral mistake, we raised that in the context of appealing the denial of summary judgment to Gasco. This court does not have to rule on that. We included it in our brief because as far as we're concerned, this might be the last time we get to argue about this case. But this court doesn't have to reach the denial of Gasco's motion for summary judgment. But I would like to draw on what Your Honor just said to make one last point, which is that this is a case where Consol claims it made a mistake. And if Consol claims it made a mistake, then it ought to show that it has a valid claim to mistake under Virginia law and it should convince a jury that it is entitled to the factual defense of mistake under Virginia law. It doesn't need to get out of its own contract on the basis of assent or contract interpretation. Thank you. Thank you. Mr. P? Irrespective of any mistake that Consol did make, Gasco still has the burden of proof on its contract. And looking at the plain language of the addendum, it cannot create an enforceable agreement. They may have had another cause of action based on Consol's mistake, but not a breach of contract claim for a contract that began June 13, 2011. I talked about how the operation of the term provision does not look to the effective date of the addendum, but it looks to a date in the reference target, the 2008 contract. In addition, what Gasco is relying on to say, well, that doesn't reflect the whole of the agreement. It's basically two things. That the parties intended to be bound, a statement in the recitals. That is boilerplate. That is true whenever a contract might be marked or executed. It does not have substantive meaning. The only substantive meaning of this addendum, it does one thing. It's found in paragraph one. And then the effective date argument that the parties that executed this agreement intending it to be effective on the effective date. That refers to the addendum. The addendum is dated June 13, 2011. That means the parties intended the addendum to be effective that date. There's nothing inconsistent with the addendum being effective on one date and it creating a term based on a different date. In fact, that's what happened in the original 2008 contract. On the signature page, and maybe the best version of the 2008 contract is the first one. We started on JA36, but on JA41, the signature page, the effective date for the 2008 contract is specified there with Gasco's signature. June 6, 2008. That's not the date from what the original two-year term when it ran from. That's July 7, 2008. That's found above in the 2008 contract in section two. So you don't get to the canon such as absurd results unless this language is ambiguous. It's only doing one thing, and when you do this operation, when it's clearly saying that the term provision of the contract purchase order, the 2008 contract, is to, quote, read as follows. That means this entire insert is transposed into the 2008 drilling contract and must be understood in that context. Well, couldn't somebody understand it to mean the date above to be the one June 13, 2011, which just happens to be above this one? That would be on a superficial reading. Sure, the word above and June 13 is above. That's how I read it, but then again, I'm pretty shallow. Well, I don't mean it in that sense, but I mean, like, if you read this quickly, what the Supreme Court of Virginia has said is it's not ambiguous just because you have to actually look at it carefully and spend some time. This is not an overly complex agreement. It's a one-page addendum. Well, then the agreement, though, doesn't mean anything, if you're right. That would be true in this case, and just like in the Cyberlock decision, in which the Fourth Circuit said the crux of the district court's reasoning was, quote, the relevant provisions were, quote, unambiguous and constitute an unenforceable agreement to agree. It would not have meaning. But we only go there if we think this is unambiguous. Well, you only go to the canon if it's ambiguous. Yes, you go to our argument if it's unambiguous. That's correct. Thank you. Thank you very much. Thank you. We will come down and greet the lawyers and then take a short recess. Sorry, the court will take a brief recess.
judges: Diana Gribbon Motz, Henry F. Floyd, John A. Gibney, Jr.